**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

SHORTY'S BROADWAY #4, LLC,      :

     **Plaintiff,**       :

**v.**       :     **Case No.** __3:26CV-421-CHB__

UNITED STATES OF AMERICA,      :

     **Defendant.**       :

## COMPLAINT

Plaintiff Shorty's Broadway #4, LLC ("Shorty's Food Mart #4" or "Store"), by and through undersigned counsel, pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, hereby files this Complaint against Defendant United States of America, and alleges:

1.      This action seeks judicial review of the Final Agency Decision ("FAD"), dated May 6, 2026, of the United States Department of Agriculture's ("USDA") Food and Nutrition Service ("FNS") permanently disqualifying Shorty's Food Mart #4, the retail food store owned by Plaintiff from participation as an authorized retailer in the Supplemental Nutrition Assistance Program ("SNAP").

## PARTIES

2.      Plaintiff Shorty's Broadway #4, LLC is a Kentucky limited lability company headquartered in Jefferson County within this judicial district.

3.      Plaintiff is the owner of Shorty's Food Mart #4, a grocery store attached to a gas station located at 1711 West Broadway, Louisville, Kentucky 40203.

4.      Shorty's Food Mart #4 is a "retail food store" as such term is defined by FNS in its SNAP regulations at 7 C.F.R. § 271.2.

5.       Defendant United States of America is the federal government.

6.       FNS is an agency of the United States Department of Agriculture ("USDA"). USDA is an executive branch department of the federal government.

7.       FNS administers and has promulgated regulations governing SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008. 7 U.S.C. § 2013.

8.       Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to approximately 38 million Americans and over a half-million residents of Kentucky. SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

9.       Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS has authority to authorize and disqualify retail food stores from participation in SNAP.

## JURISDICTION AND VENUE

10.       This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, and 28 U.S.C. §§ 1331, 1346.

11.       Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because the retail food store that is the subject of this action is located in Kentucky in this judicial district and because the United States of America is deemed a resident of this judicial district and has consented to suit in this judicial district.

12.       Shorty's Food Mart #4 has exhausted any and all administrative remedies required prior to the institution of this action.

## FACTUAL ALLEGATIONS

13.       Shorty's Food Mart #4 is a well-stocked convenience store located in an impoverished neighborhood in Louisville.

14.    At all times relevant hereto, Shorty's Food Mart #4 carried hundreds of different SNAP-eligible food items.

15.    At all times relevant hereto through February 6, 2026, Shorty's Food Mart #4 was a retail food store authorized by FNS to redeem SNAP benefits.  Shorty's Food Mart #4's FNS-issued SNAP authorization number was #0297034.

16.    On September 18, 2025, FNS's Retailer Operations Division ("ROD") charged Shorty's Food Mart #4 with trafficking in violation of FNS's SNAP regulations ("Charge Letter").

17.    The Charge Letter detailed four transactions allegedly committed by a store clerk between March 19 and 28, 2025, that FNS contended constituted trafficking in SNAP benefits in violation of FNS's SNAP regulations.

18.    The Charge Letter also detailed two transactions allegedly committed by a store clerk on February 15 and March 1, 2025, that FNS contended constituted accepting SNAP benefits in exchange for ineligible items in violation of FNS's SNAP regulations.

19.    In each of the four alleged trafficking violations, the Charge Letter asserted that the clerk used the undercover investigator's EBT card at undisclosed locations in exchange for cash.

20.    On or about September 25, 2025, Shorty's Food Mart #4 submitted its written response to the Charge Letter. In its response, *inter alia,* Shorty's Food Mart #4 denied that the Store engaged in trafficking in SNAP benefits or accepted SNAP benefits in exchange for ineligible items and requested that FNS impose a civil money penalty ("CMP") in lieu of permanent disqualification.

21.     On February 6, 2026, FNS issued its initial determination permanently disqualifying Shorty's Food Mart #4 from participation in SNAP as an authorized retailer ("Initial Determination").

22.     The Initial Determination contained no substantive discussion or analysis whatsoever.  Instead, the Initial Determination summarily concluded that "the violations cited in the charge letter occurred at your store."  Additionally, the Initial Determination letter stated that the Store's request for a Trafficking CMP was denied because "[y]ou did not submit sufficient evidence to meet the required criteria under SNAP regulation 7 CFR 278.6(i)." *Id.*

23.     The Initial Determination did not impose a term disqualification of the Store from SNAP based on the sale of SNAP-ineligible items.

24.     On February 9, 2026, Shorty's Food Mart #4 timely requested administrative review of the Initial Determination, pursuant to 7 C.F.R. §279.1 *et seq.*, to FNS's Administrative and Judicial Review Branch ("AJRB").

25.     On or about March 31, 2026, Shorty's Food Mart #4 submitted its response in support of its request for administrative review.  In its response, Shorty's Food Mart #4 again denied that trafficking took place, and requested that AJRB reverse the trafficking determination and, in the alternative, impose a Trafficking CMP.

26.     On May 6, 2026, FNS Administrative Review Officer David Shively ("ARO Shively") issued the FAD. A copy of the FAD is attached hereto as **Exhibit A**.

27.     The FAD affirmed the permanent disqualification of the Store from SNAP for trafficking.

28.    The FAD held that ", based upon a preponderance of evidence, that Appellant failed to satisfy its burden and that trafficking, as found in Exhibits F and J, did occur at the Appellant store." FAD, at 7.

29.    In the FAD, FNS rejected all of Shorty's Food Mart #4's arguments, notwithstanding the evidence submitted by the Store.

30.    FNS's FAD relied upon records and other information in FNS's possession.

31.    The records and other information relied upon by ARO Shively in issuing the FAD were never provided to Shorty's Food Mart #4.

32.    FNS's FAD was based on numerous incorrect factual and legal determinations, including (but not limited to) relating to the visits by the undercover USDA investigator, the burden of proof, and numerous credibility determinations.

33.    Upon information and belief, at no time did any FNS Program Specialist, including Stephen Conkey, the FNS program specialist who issued the Charge Letter, ever visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

34.    Upon information and belief, at no time did any FNS Program Specialist, including Stephen Conkey, the FNS program specialist who issued the Charge Letter, ever discuss the allegations set forth in the Charge Letter with the undercover USDA investigator.

35.    Upon information and belief, at no time did any FNS Section Chief, including Kevin Hobbs, the FNS section chief who signed the Charge Letter, visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

36.    Upon information and belief, at no time did any FNS Section Chief, including Kevin Hobbs, the FNS section chief who signed the Charge Letter, ever discuss the allegations set forth in the Charge Letter with the undercover USDA investigator.

37.     Upon information and belief, at no time did ARO Shively, who issued the FAD, ever visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

38.     Upon information and belief, at no time did ARO Shively ever discuss the allegations set forth in the Charge Letter with the undercover USDA investigator.

39.     The FAD was based upon records other than USDA's Report of Positive Investigation that were never produced to the Store or undersigned counsel.

40.     The FAD ignored the evidence submitted by the Store in its response in support of its Request for Administrative Review.

41.     The FAD is FNS's final administrative determination that its permanent disqualification of Shorty's Food Mart #4 from participation as an authorized SNAP retailer was properly imposed.

42.     The FAD is FNS's final administrative determination that Shorty's Food Mart #4 was not eligible for a CMP.

43.     No Store funds were ever used during any of the alleged trafficking transactions referenced in the Charge Letter.

44.     No one with authority to bind the Store ever interacted with the undercover USDA investigator.

45.     Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were outside of the scope of their employment with Shorty's Food Mart #4.

46.     Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were not authorized by Shorty's Food Mart #4.

47.     Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were outside of the scope of the duties of a Shorty's Food Mart #4 clerk.

48.     Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were inconsistent with and violated Store policies.

49.     Trafficking is defined in 7 C.F.R. §271.2.

50.     The Charge Letter did not articulate which of the six sub-sections of 7 C.F.R. § 271.2 the Store allegedly violated.

51.     The penalty for trafficking is the <u>permanent</u> disqualification of the Store from participating in SNAP. 7 C.F.R. § 278.6(e)(1).

52.     Congress, in enacting the Food & Nutrition Act of 2008, intended FNS to make CMPs reasonably available to SNAP retailers.

53.     FNS promulgated criteria for CMP eligibility that are unreasonable, inconsistent with the Food & Nutrition Act of 2008, and in excess of authority delegated to it by Congress and/or the Secretary of the U.S. Department of Agriculture.

54.     FNS granted only six (6) CMPs in lieu of permanent disqualification for trafficking during fiscal year 2024.  At the same time, it permanently disqualified 733 small retailers (and only one supermarket and zero superstores) from SNAP for trafficking.

55.     Upon information and belief, during administrative proceedings, FNS relied upon records not provided to Shorty's Food Mart #4 and issued its Final Agency Decision to permanently disqualify the Store from SNAP based on records never produced to the Plaintiff.

56.     All information reviewed and relied upon by FNS during administrative proceedings will be produced as the Administrative Record or during discovery in this judicial review proceeding.

57.     FNS, in the FAD, ignored well-founded explanations that Shorty's Food Mart #4 did not engage in trafficking.

58.    FNS, in the FAD, ignored the evidence submitted by Shorty's Food Mart #4 that entitled it to a CMP in lieu of permanent disqualification for trafficking.

59.    Shorty's Food Mart #4 was not afforded the opportunity to evaluate and respond to all the evidence in FNS's possession during administrative proceedings, including all of the evidence reviewed and/or relied upon by FNS in making its Final Agency Decision.

60.    Requiring retailers to await judicial review proceedings before they are permitted to review all the evidence in FNS's possession and relied upon by Administrative Review Officers and other FNS officials is arbitrary and capricious.

61.    FNS's SNAP retailer administrative process is Kafka-esque and more similar to a Star Chamber than an equitable federal administrative process.

62.    Federal administrative proceedings that concern the revocation of a license or permit issued by a federal agency must satisfy due process and other constitutional requirements.

63.    FNS is not a law enforcement agency.

64.    FNS investigators are not authorized by federal law to carry firearms or other weapons when conducting investigations of SNAP retailers.

65.    No statute or regulation prohibits FNS from providing Shorty's Food Mart #4 with the entire administrative record during administrative review proceedings.

66.    By failing to provide Shorty's Food Mart #4 with all information available to it, FNS did not provide Shorty's Food Mart #4 with a meaningful opportunity to respond to the allegations in the Charge Letter in a manner consistent with the Due Process clause of the U.S. Constitution.

67.    By failing to provide Shorty's Food Mart #4 with all information available to it, FNS did not provide Shorty's Food Mart #4 with a meaningful opportunity to participate

during administrative review proceedings in a manner consistent with the Due Process clause of the U.S. Constitution.

## COUNT I –*DE NOVO* REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R § 279.7

68. Plaintiff repeats and re-alleges paragraphs 1 through 67 as if fully set forth herein.

69. At no time did Shorty's Food Mart #4 engage in trafficking in SNAP benefits.

70. At no time did Shorty's Food Mart #4 exchange SNAP benefits for cash.

71. The undercover USDA investigator was not a SNAP beneficiary.

72. The EBT card used by the undercover USDA investigator was not a validly issued EBT card.

73. The exchange of SNAP benefits for cash by a Store clerk is outside of the scope of his employment.

74. The exchange of SNAP benefits for cash by a Store clerk acting outside of the scope of his employment is not trafficking in SNAP benefits.

75. A SNAP-authorized retail food store is not responsible for all acts and omissions by store clerks.

76. FNS did not and does not have statutory authority to permanently disqualify a SNAP-authorized retail food store based on acts and omissions by store clerks outside of the scope of their employment.

77. FNS did not and does not have regulatory authority to permanently disqualify a SNAP-authorized retail food store based on acts and omissions by store clerks outside of the scope of their employment.

78. The exchange of SNAP benefits for cash by a Store clerk acting outside of the scope of his employment is not trafficking in SNAP benefits.

79.    The Food and Nutrition Act of 2008 does not impose strict liability upon a SNAP-authorized retail food store for all and omissions by store employees.

80.    FNS's SNAP regulations do not impose strict liability upon a SNAP-authorized retail food store for all acts and omissions by store employees.

81.    The Food and Nutrition Act of 2008 does not impose strict liability upon a SNAP-authorized retail food store for acts by store employees acting outside the scope of their employment.

82.    FNS's SNAP regulations do not impose strict liability upon a SNAP-authorized retail food store for acts by a store employee acting outside the scope of their employment.

83.    A preponderance of the evidence before ARB during administrative review proceedings established that Shorty's Food Mart #4 did not engage in trafficking in SNAP benefits.

84.    In the FAD, FNS incorrectly determined that a preponderance of the evidence demonstrated that Shorty's Food Mart #4 engaged in trafficking, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

85.    The permanent disqualification of Shorty's Food Mart #4 from participating in SNAP should be reversed because FNS failed to consider all evidence submitted by the Store.

86.    The permanent disqualification of Shorty's Food Mart #4 from participating in SNAP should be reversed because FNS waited for over seven months after the first alleged trafficking transaction took place before issuing the Charge Letter.

87.    The permanent disqualification of Shorty's Food Mart #4 from participating in SNAP should be reversed because FNS did not interview anyone affiliated with the Store.

88. The permanent disqualification of Shorty's Food Mart #4 from participating in SNAP should be reversed because FNS did not interview the undercover investigator or take other action to confirm the veracity of the Report of Positive Investigation.

89. The FAD should be reversed because the permanent disqualification of Shorty's Food Mart #4 from participating in SNAP is unreasonable and excessive in light of the circumstances.

90. The FAD should be reversed because Shorty's Food Mart #4 submitted substantial evidence supporting a CMP in lieu of permanent disqualification for trafficking in SNAP benefits.

91. FNS's acts and omissions during administrative proceedings were unreasonable, inequitable, in excess of the authority granted to it by Congress, and arbitrary and capricious.

92. FNS's acts and omissions during administrative proceedings violated and were not consistent with the requirements of the Due Process clause of the U.S. Constitution.

93. Permanent disqualification of Shorty's Food Mart #4 from participating in SNAP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

94. Permanent disqualification of Shorty's Food Mart #4 from participating in SNAP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to FNS to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

95. FNS's permanent disqualification of Shorty's Food Mart #4 from participating in SNAP based upon circumstantial evidence represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

96. FNS's permanent disqualification of Shorty's Food Mart #4 from participating in SNAP based on the Charge Letter is inconsistent with a disqualification for a "reasonable period of time."

97. FNS's determination that it was without authority to consider a penalty other than permanent disqualification of Shorty's Food Mart #4 from participating in SNAP is invalid and erroneous.

98. FNS's denial of Shorty's Food Mart #4 request for a CMP in lieu of permanent disqualification for trafficking was arbitrary, capricious, invalid, and erroneous.

99. The Initial Determination and the FAD were based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

100. In the FAD, FNS acted arbitrarily and capriciously in concluding that Shorty's Food Mart #4 engaged in trafficking in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

101. In the FAD, FNS acted arbitrarily and capriciously in denying Shorty's Food Mart #4's request for a CMP in lieu of permanent disqualification for trafficking.

102. FNS's permanent disqualification of Shorty's Food Mart #4 is premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.6.

103. In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Shorty's Food Mart #4 and its SNAP authorization.

104. Pursuant to 7 U.S.C. § 2023 and 7 C.F.R. § 279.7, this Court should conduct a *de novo* review of FNS's FAD which permanently disqualified Shorty's Food Mart #4 from participating in the SNAP and denied its request for a CMP.

WHEREFORE, Plaintiff Shorty's Food Mart #4 respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(a)  Reversing the FAD;

(b)  Rescinding the Initial Determination;

(c)  Preliminarily and permanently enjoining FNS from denying Shorty's Food Mart #4 authorization to participate in SNAP based upon the Initial Determination, the FAD, or the alleged violations in the Charge Letter;

(d)  Declaring that the purchase of an EBT card from an undercover investigator by a store clerk asking outside of the scope of their employment is not trafficking in SNAP benefits as a matter of law;

(e)  Directing FNS to immediately restore Shorty's Food Mart #4's SNAP authorization and without requiring it to submit additional information or a new application;

(f)  Directing FNS, in the alternative, to impose a CMP in lieu of permanent disqualification of the Store for trafficking;

(g)  Restoring Shorty's Food Mart #4's SNAP authorization;

(h)  Awarding Shorty's Food Mart #4 an amount equal to its reasonable attorneys' fees and costs; and

(i)  Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 1st day of June 2026.

By:  */s/ M. Thurman Senn*
M. Thurman Senn (KBA #82343)
MORGAN POTTINGER McGARVEY
401 S 4th Street #1200
Louisville, KY 40202
(502) 560-6750
mts@mpmfirm.com

Stewart D. Fried, Esq. (*pro hac vice* forthcoming)
OLSSON FRANK WEEDA TERMAN MATZ PC
2000 Pennsylvania Avenue, N.W., Suite 4003
Washington, DC 20006
Telephone: 202.518.6326
sfried@ofwlaw.com

*Attorneys for Plaintiff Shorty's Broadway #4, LLC*