# EXHIBIT A

_____

## May 6, 2026 USDA Final Agency Decision
## Case Number: C0294582



**United States Department of Agriculture**

Food and Nutrition Service

Supplemental Nutrition Assistance Program

Retailer Policy Division

Administrative and Judicial Review Branch

1320 Braddock Place, 5th Floor, Alexandria, VA 22314

David.shively@usda.gov

May 6, 2026

Mansoor Ansari
8911 N. Capital of Texas Hwy
4200
Austin, TX 78729

RE: Case Number - C0294582
Shorty's Food Mart #4
1711 W Broadway
Louisville, KY 40203-3519

Dear Counselor:

Enclosed is the Final Agency Decision of the U.S. Department of Agriculture (USDA), Food and Nutrition Service (FNS) in response to your request for an administrative review dated February 9, 2026. Also included therein is a statement regarding your rights to a judicial review.

It is the decision of the USDA that there is sufficient evidence to support a permanent disqualification of Shorty's Food Mart #4 from participation as an authorized retailer in the Supplemental Nutrition Assistance Program as imposed by FNS's Retailer Operations Division.

Sincerely,

DAVID A. SHIVELY
Administrative Review Officer

Enclosure

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative Review Branch**

Shorty's Food Mart #4,

Appellant,

v.

Retailer Operations Division,                              Case Number: C0294582

Respondent.

## FINAL AGENCY DECISION

It is the decision of the United States Department of Agriculture (USDA) that there is sufficient evidence to support a finding that a permanent disqualification of Shorty's Food Mart No. 4 (Appellant) from participation as an authorized retailer in the Supplemental Nutrition Assistance Program (SNAP), as initially imposed by the Retailer Operations Division, was appropriate.

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with 7 CFR § 278.6(f)(1) and 7 CFR § 278.6(a) and (e)(5) in its administration of the SNAP, when it imposed a permanent disqualification against Appellant.

## AUTHORITY

7 USC § 2023 and the implementing regulations at 7 CFR § 279.1 provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may file a written request for review of the administrative action with FNS."

## CASE CHRONOLOGY

The USDA investigated the compliance of Appellant with federal SNAP law and regulations during the period of February 13, 2025, through March 28, 2025. The investigative report documented personnel at Appellant's firm accepted SNAP benefits in exchange for ineligible merchandise on two separate occasions. The firm also reportedly committed the violation of trafficking by exchanging SNAP benefits for cash on four occasions. As a result of evidence compiled during this investigation, by letter dated September 18, 2025, the Retailer Operations Division charged the Appellant with trafficking, as defined in Section 271.2 of the SNAP

1

regulations. It also charged the Appellant with accepting SNAP benefits in exchange for ineligible non-food merchandise. The charge letter informed the Appellant that the violations warranted permanent disqualification from SNAP as provided in 7 CFR § 278.6(e)(1). The letter also stated that the Appellant could request a civil money penalty (CMP) in lieu of permanent disqualification for trafficking but noted that such a request must be made within 10 days of receipt of the letter under the conditions specified in 7 CFR § 278.6(i).  The Appellant responded, through counsel, to the charge letter on September 25, 2025, and again on October 29, 2025.

After re-considering the evidence and Appellant's responses, , the Retailer Operations Division issued a determination letter dated February 6, 2026. This letter informed the Appellant that it would be permanently disqualified from SNAP upon receipt of the letter in accordance with 7 CFR § 278.6(c) and § 278.6(e)(1). The determination letter also stated that the Retailer Operations Division considered the Appellant's eligibility for a trafficking CMP in accordance with paragraph § 278.6(i) but determined that the Appellant was not eligible for a CMP because Appellant failed to submit sufficient evidence to meet the required criteria under SNAP regulations.

By email dated February 9, 2026, Appellant, through counsel, requested an administrative review of the Retailer Operations Division's determination. The request was granted. On April 30, 2026, this matter was reassigned to Administrative Review Officer David Shively.

## STANDARD OF REVIEW

In appeals of adverse actions, the Appellant bears the burden of proving by a preponderance of the evidence, that the administrative actions should be reversed. That means the Appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling statute in this matter is contained in the Food and Nutrition Act of 2008, as amended, 7 USC § 2021 and § 278 of Title 7 of the Code of Federal Regulations (CFR). Sections 278.6(a) and (e)(5) establish the authority upon which a six-month disqualification may be imposed against a retail food store or wholesale food concern.

7 U.S.C. § 2021(b)(3)(B) states, in part:

> ...[A] disqualification under subsection (a) shall be... permanent upon...the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store or wholesale food concern or a finding of the unauthorized redemption, use, transfer, acquisition, alteration, or possession of EBT cards...

7 CFR § 278.2(a) states, in part:

2

[SNAP benefits] may be accepted by an authorized retail food store only from eligible households...only in exchange for eligible food.

7 CFR § 278.6(a) states, in part:

FNS may disqualify any authorized retail food store...if the firm fails to comply with the Food and Nutrition Act of 2008, as amended, or this part. Such disqualification shall result from a finding of a violation on the basis of evidence that may include facts established through on-site investigations.... Disqualification shall be for a period of 6 months to 5 years for the firm's first sanction; for [a] period of 12 months to 10 years for a firm's second sanction; and disqualification shall be permanent for a disqualification based on paragraph (e)(1) of this section.[Emphasis added.]

7 CFR § 278.6(c) states, in part:

The letter of charges, the response, and any other information available to FNS shall be reviewed and considered by the appropriate FNS regional office, which shall then issue the determination. In the case of a firm subject to permanent disqualification under paragraph (e)(1) of this section, the determination shall inform such a firm that action to permanently disqualify the firm shall be effective immediately upon the date of receipt of the notice of determination from FNS, regardless of whether a request for review is filed in accordance with part 279 of this chapter.

7 CFR § 278.6(e) states, in part:

The FNS regional office shall: (1) Disqualify a firm permanently if: (i) Personnel of the firm have trafficked as defined in § 271.2. 7 CFR § 271.2 states, in part: Trafficking means: (1) The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone...

7 CFR § 271.2 states, in part:

Eligible foods means: Any food or food product intended for human consumption except alcoholic beverages, tobacco and hot food and hot food products prepared for immediate consumption.

7 CFR § 278.6(b)(2)(ii) states, in part:

Firms that request consideration of a civil money penalty in lieu of a permanent disqualification for trafficking shall have the opportunity to submit to FNS information and evidence... that establishes the firm's eligibility for a civil money penalty in lieu of a permanent disqualification in accordance with the criteria included in § 278.6(i). This information and evidence shall be submitted within 10 days, as specified in § 278.6(b)(1).

3

7 CFR § 278.6(b)(2)(iii) states:

> If a firm fails to request consideration for a civil money penalty in lieu of a permanent disqualification for trafficking and submit documentation and evidence of its eligibility within the 10 days specified in § 278.6(b)(1), the firm shall not be eligible for such a penalty.

7 CFR § 278.6(i) states, in part:

> FNS may impose a civil money penalty in lieu of a permanent disqualification for trafficking...if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program....

## APPELLANT'S CONTENTIONS

Appellant made the following summarized contentions in its administrative review request dated February 9, 2026, and its supplemented response submitted March 31, 2026, in relevant part:

- The owner has been in business since 2010 and an EBT vendor since 2010.
- Appellant had no history of SNAP violations.
- The owner meets Criterion 1 since he implemented an effective compliance policy and a photocopied booklet is provided to each employee and issues concerning EBT processing are addressed as questions and issues arise. The compliance policy states there is no exchange of cash for EBT and only qualified EBT grocery items can be sold to customers.
- Criterion 2: The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of violations cited in the charge letter sent to the firm;
- Criterion 3: The owner's training program includes a review of the FNS Handbook with each new employee and they are told to call the USDA or the store owner if they have any questions;
- Criterion 4: Repeated the wording from SNAP regulations;
- Appellant states it has trained its employees.
- For over 15 years, the store has remained one of the most accessible and reliable sources of food and gas in the area.
- Upon receiving the charge letter, Appellant was shocked as there was full confidence that employees had been properly trained.
- Appellant states to look at Exhibits A and I which demonstrate that clerks properly enforced SNAP requirements. In Exhibit A, the clerk separated food items from nonfood items and refused to process the sale when pressed.
- Exhibit I shows the clerks once again conducted transactions in accordance with program regulations.

4

- With respect to the transactions reflected in Exhibits E through H, Appellant states that these actions were the result of the clerk's personal misconduct, carried out entirely outside the scope of store management's knowledge, authorization, or approval.
- As shown in Exhibit E, clerk initiated personal contact with the investigator, provided his personal cell phone number, and engaged in discussions about purchasing the EBT card. He further pulled cash directly from his own wallet to hand to the investigator, demonstrating that this was a private, off-the-books transaction for his personal benefit. Exhibit F further establishes that clerk kept the EBT card in his own sling bag alongside his wallet, withdrew cash from it, and conducted side dealings without the oversight or involvement of any other store personnel. Similarly, Exhibits G and H show that when clerk was not present, the other clerks processed purchases correctly and in full compliance with SNAP requirements, refusing to engage in any improper activity.
- Exhibits C and D appear to have been incorrectly flagged as SNAP violations.
- This is not a willful violation.
- Appellant has taken corrective action.
- Appellant states it trains each employee to the best ability he possibly can and has. However, each employee is an individual who has self-autonomy and there are limits to control.
- Appellant requests an HCMP.

The preceding may represent only a summary of the Appellant's contentions presented in this matter. However, in reaching a decision, full attention and consideration has been given to all contentions presented, including any not specifically recapitulated or specifically referenced. Appellant also attached six exhibits to its appeal: Exhibit A: owner affidavit; Exhibit B: employee affidavit; Exhibit C: customer affidavits; Exhibit D: store photos; Exhibit E: Termination of employee; and Exhibit F: Store Training Policy.

## ANALYSIS AND FINDINGS

Trafficking is defined in SNAP regulations, at 7 CFR § 271.2, as "The buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards, card numbers and personal identification numbers (PINs), or by manual voucher and signature, for cash or consideration other than eligible food…." Trafficking is an extremely serious violation and both 7 U.S.C. § 2021(b)(3)(B) and 7 CFR § 278.6(e)(1)(i) provide that even one trafficking violation warrants a permanent disqualification.

In this case, the report of investigation, signed by the investigator under penalty of perjury, documents that the charges of violations are based on the findings of a formal USDA investigation. A complete review of this documentation has yielded no material error or discrepancy. The investigation report appears to be specific and thorough regarding the dates of the violations, the critical facts related thereto, and is supported by documentation that confirms the details of the transactions. The record further indicates that the Retailer Operations Division has documented the transactions in which personnel at the store trafficked SNAP benefits as noted in Exhibits F and J, only, warranting a permanent disqualification as a SNAP retail food store.

5

As stated above, in an appeal of an adverse action, the Appellant bears the burden of proving by a preponderance of evidence that the administrative action should be reversed. That means the Appellant has the burden of providing relevant evidence that a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the argument asserted is more likely to be true than untrue.

Appellant maintains that it has never violated SNAP guidelines before. While this may be true, 7 U.S.C. § 2021(b)(3)(B) and SNAP regulations at 7 CFR § 278.6(e) require that when trafficking occurs, permanent disqualification is the necessary penalty, even on the first occasion, regardless of a firm's prior compliance with program rules. This review finds that the sanction imposed by the Retailer Operations Division in this case fully conforms to SNAP regulations and is consistent with sanctions imposed upon other retail stores that have committed similar first-time violations.

Appellant further argues that the clerk's refusal to sell ineligible goods in Exhibits A and I demonstrates that the clerks are trained. This review acknowledges that the sale of ineligible goods was refused in Exhibit A, however, in Exhibit I, the investigator did not attempt to purchase non-food items using EBT. Nevertheless, the willingness of the employee to engage in trafficking, Exhibits F and J, as well as the sale of ineligible non-food items, Exhibits C and D, raise serious concerns as to the effectiveness of Appellant's training.

As to Appellant's claim that Exhibits C and D were minor purchases, neither the Food and Nutrition Act of 2008, as amended, nor the regulations issued pursuant thereto cite any minimum dollar amount of SNAP benefits for transactions involving the sale of ineligible items to be defined as violative. No mention of minimum cost or types of ineligibles is cited in Section 278.6(e)(5) of the SNAP regulations, which states that FNS shall disqualify a store the sale of common nonfood items in exchange for SNAP benefits due to carelessness by store employees or poor supervision by the firm's ownership or management. The applicable regulations also do not specify intent as being a required element although the evidence in this matter indicates that the clerk intended to sell ineligible items.

Appellant also states that despite the training, each employee is an individual who has self-autonomy and there's only so much Appellant can do. This review acknowledges Appellant's situation but when ownership signed the FNS application to become an authorized SNAP retailer, the application included a certification and confirmation that the owner(s) would "accept responsibility on behalf of the firm for violations of the SNAP regulations, including those committed by any of the firm's employees, paid or unpaid, new, full-time or part-time." The violations listed on this certification document include trafficking. Regardless of whom the ownership of a store may utilize to operate the cash register and handle store business, ownership is accountable for the proper handling of SNAP benefit transactions.

Appellant, through counsel, further asserts that one offending employee has been terminated and has taken other corrective measures. With regard to these statements, this review has no authority to consider any subsequent remedial actions, such as terminating or disciplining the violating employees, that may have been taken or that will take place so that a store complies with program requirements. There are no provisions in the SNAP regulations for a waiver or

6

reduction of an administrative penalty on the basis of alleged or planned corrective actions implemented after the discovery of program violations. Accordingly, the Appellant's remedial actions do not provide a valid basis for dismissal or modification of the disqualification determination.

Appellant also asserts that its permanent disqualification would cause a hardship to the community. In support, Appellant attached photos of the store. With regard to a hardship on the community, 7 CFR § 278.6(f) of the SNAP regulations provides for civil money penalty assessments in cases where disqualification would cause "hardship" to SNAP households because of the unavailability of a comparable participating food store in the area to meet their needs. However, this regulation also sets forth the following specific exception to such assessments there under: "A civil money penalty for hardship to SNAP households may not be imposed in lieu of a permanent disqualification." Therefore, since this case involves a permanent disqualification action, the civil money penalty provision is not applicable to the present case.

In light of the above, this review finds, based upon a preponderance of evidence, that Appellant failed to satisfy its burden and that trafficking, as found in Exhibits F and J, did occur at the Appellant store.  Furthermore, this review finds that the permanent disqualification of Appellant's firm was properly applied.

## CIVIL MONEY PENALTY

The Retailer Operations Division determined that the Appellant was not eligible for a trafficking CMP in lieu of a disqualification under 7 CFR 278.6(i) because Appellant failed to submit sufficient evidence to demonstrate that the firm had established and implemented an effective compliance policy and program to prevent SNAP violations within the specified timeframe. As such, the Office of Retailer Operations and Compliance determined that Appellant was not eligible for a trafficking CMP in lieu of permanent disqualification.

As noted above, when store ownership signed the certification page of the SNAP retailer application to become a SNAP retailer, it confirmed it understood and agreed to abide by program rules and regulatory provisions. It also agreed to accept responsibility on behalf of the firm for violations of the SNAP including those committed by any of the firm's employees, paid or unpaid, new, full-time, or part-time. SNAP regulations do authorize a trafficking CMP for those owners who can document that they established and implemented an effective compliance policy and program to prevent SNAP violations under 7 CFR 278.6(i) and described below.

To be considered eligible for a trafficking CMP a firm must establish, by substantial evidence, its fulfillment of each of the following criteria:

- Criterion 1: The firm shall have developed an effective compliance policy as specified in Section 278.6(i)(1).
- Criterion 2: The firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of violations cited in the charge letter sent to the firm.

7

- Criterion 3: The firm had developed and instituted an effective personnel training program as specified in Section 278.6(i)(2).
- Criterion 4: Firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations. Or it is the first occasion in which a member of firm management was aware of, approved, benefited from, or was involved in the conduct of any trafficking violations by the firm.

SNAP regulations are explicit in what constitutes substantial evidence. Specifically, 7 CFR § 278.6(i)(1) and 278.6(i)(2) state, "(1) Compliance policy standards. As specified in Criterion 1 above, in determining whether a firm has established an effective policy to prevent violations, FNS shall consider written and dated statements of firm policy which reflect a commitment to ensure that the firm is operated in a manner consistent with this part 278 of current FSP regulations and current FSP policy on the proper acceptance and handling of food coupons. As required by Criterion 2, such policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation. In addition, in evaluating the effectiveness of the firm's policy and program to ensure FSP compliance and to prevent FSP violations, FNS may consider the following:

(i)     Documentation reflecting the development and/or operation of a policy to terminate the employment of any firm employee found violating FSP regulations;

(ii)    Documentation of the development and/or continued operation of firm policy and procedures resulting in appropriate corrective action following complaints of FSP violations or irregularities committed by firm personnel;

(iii)   Documentation of the development and/or continued operation of procedures for internal review of firm employees' compliance with FSP regulations;

(iv)    The nature and scope of the violations charged against the firm;

(v)     Any record of previous firm violations under the same ownership; and

(vi)    Any other information the firm may present to FNS for consideration."

(2) Compliance training program standards. As prescribed in Criterion 3 above, the firm shall have developed and implemented an effective training program for all managers and employees on the acceptance and handling of food coupons in accordance with this part 278. A firm which seeks a civil money penalty in lieu of a permanent disqualification shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s). FNS shall consider a training program effective if it meets or is otherwise equivalent to the following standards:

(i)     Training for all managers and employees whose work brings them into contact with SNAP benefits or who are assigned to a location where SNAP benefits are accepted, handled, or processed shall be conducted within one month of the institution of the compliance policy under Criterion 1 above. Employees hired subsequent to the institution of the compliance policy shall be trained within one month of employment. All employees shall be trained periodically thereafter;

8

(ii)    Training shall be designed to establish a level of competence that assures compliance with Program requirements as included in this part 278;

(iii)   Written materials, which may include FNS publications and program regulations that are available to all authorized firms, are used in the training program. Training materials shall clearly state that the following acts are prohibited and are in violation of the Food and Nutrition Act of 2008 and regulations: the exchange of food coupons, ATP cards or other program access devices for cash; and, in exchange for coupons, the sale of firearms, ammunition, explosives or controlled substances, as the term is defined in section 802 of title 21, United States Code."

According to Appellant, Appellant meets all the criteria for a civil money penalty. In support, it attached an ownership affidavit and employee training acknowledgements. When examined, the Retailer Operations Division questioned the authenticity of the training records. One of the records showed that an employee was hired in 2024, but a review of a contracted store visit in 2023 showed that same employee consented to the store visit. Additionally, there was a lack of documentation to show that refresher SNAP training was actually conducted as claimed. Consequently, the Retailer Operations Division found that Appellant failed to meet Criterion 2 and 3. After review, this review agrees with that assessment. Based on the inconsistencies, it is more likely than not that store ownership did not have an effective compliance policy and program in effect for the Appellant firm prior to the occurrence of the charge letter violations.

Based on the above discussion and the evidence under review, Appellant failed to meet the regulatory standard for a trafficking CMP as it did not provide substantial evidence that it met all four criteria required by 7 CFR §278.6(i) within the specified timeframe, and the decision not to impose a CMP in lieu of disqualification is sustained as appropriate pursuant to 7 CFR §278.6(i).

## CONCLUSION

This review finds, by a preponderance of the evidence, that program violations of 7 CFR § 278.2(a) did occur at Shorty's Food Mart No. 4 during a USDA investigation. Accordingly, the Retailer Operations Division's determination to impose a permanent disqualification against Shorty's Food Mart No. 4 is sustained.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

9

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.


David A. Shively                                             May 6, 2026
Administrative Review Officer

10